2001 OK CR 9

**Sterling Bernard WILLIAMS, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. D–99–654.**

Court of Criminal Appeals of Oklahoma.

April 9, 2001.

Rehearing Denied May 17, 2001.

As Corrected June 21, 2001.

706

Julia L. O'Connell, Richard L. Clark, Barry L. Derryberry, Assistant Public Defenders, Tulsa, OK, Counsel for Appellant, at trial.

William LaFortune, District Attorney, Mark L. Collier, Assistant District Attorney, Tulsa, OK, Counsel for the State, at trial.

Barry L. Derryberry, Gretchen L. Garner, Assistant Public Defenders, Tulsa, OK, Counsel for Appellant, on appeal.

W.A. Drew Edmondson, Attorney General Of Oklahoma, Jennifer B. Miller, Assistant Attorney General, Oklahoma City, Ok, Counsel for the State, on appeal.

**OPINION**

LUMPKIN, Presiding Judge:

¶1 Appellant Sterling Bernard Williams was tried by jury and convicted of First Degree Murder (Count I) (21 O.S.1991, § 701.7) and Assault and Battery with Intent to Kill, After Former Conviction of Two Felonies (Count II) (21 O.S.Supp.1992, § 652), Case No. CF–97–2385, in the District Court of Tulsa County. In Count I, the jury found the existence of four (4) aggravating circumstances and recommended the punishment of death. In Count II, the jury recommended as punishment ninety-nine (99) years imprisonment. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.[1]

¶2 Appellant was convicted of the premeditated murder of LeAnna Hand and of the assault and battery with intent to kill on her roommate Elizabeth Hill. In May of 1997, Appellant worked as an independent contractor for Willard Enterprises Colorado Choice Meat Company. He had sold Hand meat on prior occasions. On May 14, 1997, Appellant phoned Hand and said he had some free meat he was going to give away and that he would bring it by her home. At approximately 11:00 a.m., Hill was in her room dressing when she heard a knock at the front door. A moment later, she heard the answering machine on the telephone click on. Hill picked up the phone in her bedroom and discovered Hand's mother on the line. Hill spoke for just a moment, then she heard Hand call her name from the other room. She opened her bedroom door and saw Hand struggling with Appellant. Hill heard Hand fall to the floor and saw Appellant standing over her body. Hill immediately shut her bedroom door and locked it. She tried to call 9–1–1 but could not get an open phone line. Appellant then kicked down her bedroom door and knocked the phone out of her hand. He told Hill to be quiet. Instead, she screamed and tried to run out of the room. She escaped from her room, but Appellant

---

1. Appellant's Petition in Error was filed in this Court on November 8, 1999. Appellant's brief was filed July 5, 2000. The State's brief was filed September 18, 2000. The case was submitted to the Court September 25, 2000. Appellant's reply brief was filed November 7, 2000. Oral argument was held January 5, 2001.

tackled her in the hallway. He threw her to the ground, climbed on top of her, and put both hands around her neck. Despite Appellant's attempts to choke Hill, she fought back and was able to free herself and run out of the front door of the duplex.

¶ 3 Hill was running to a neighbor's home when the manager of a nearby apartment complex, Carol Gorman, saw her and waved her over. Gorman observed bloody hand prints on Hill's neck. Meanwhile, as soon as Hill ran out of the duplex, Appellant also left. He walked to his car parked in the driveway of the duplex and drove away.

¶ 4 The police arrived at the scene to find Hand dead in her living room. She had suffered a seven inch stab wound to her chest. The knife cut through her ribs, through a portion of her left lung, completely through her heart and into her right lung. The knife was still in her body, tangled in her clothes. Near the victim the police found a box from the Colorado Choice Meat Company, a roll of duct tape, a baseball cap with the company logo, and a pair of gloves. Nothing was missing from the duplex, including cash Hill had left on her bed.

¶ 5 On the same day, Appellant phoned his employer and said he had just killed a girl and had to go to Chicago to hide out. Appellant withdrew money from his back account. Appellant also phoned his girlfriend, Consuela Drew, and told her he was going to jail. An all points bulletin was issued containing a description of Appellant's car. The next day, May 15, 1997, Ms. Drew again spoke with Appellant and told him to turn himself in to the police. That same day Appellant was stopped by authorities in Alexandria, Louisiana. He had a serious cut to the index finger on his left hand, and scratches on his neck, face and chest. Appellant cooperated with the officers and asked that the $121 dollars taken from him be given to his children.

¶ 6 A t-shirt retrieved from Appellant later tested positive for Hand's DNA. The knife found at the murder scene was found to match a butcher block set of knives in Appellant's home.

¶ 7 At trial, the defense offered no evidence during the guilt stage. During the second stage of trial, the State presented evidence to support four aggravating circumstances. This evidence consisted of two Judgment and Commitment Orders from the State of Arkansas indicating Appellant's prior convictions for rape, kidnapping, burglary, and first degree battery. The State's evidence also showed that on separate occasions, Appellant had attacked girlfriend, Yolanda Cunningham; broken into the home of Mike Applebury and attacked him with a baseball bat; and made obscene threatening phone calls to Michelle Sauser.

¶ 8 During the second stage, the defense argued Appellant suffered from several mental health difficulties, including bipolar disorder and a sexual disorder. Expert witness testimony was offered to show that Appellant's family had a history of severe substance abuse and poor anger control. Evidence also showed Appellant suffered from childhood physical abuse at the hands of his father. Expert witness testimony showed Appellant went to Hand's home intending only to rape her, not kill her, and that his mental disorders caused him to panic when Hand resisted and he stabbed her only intending to silence her.

¶ 9 Appellant raises twenty (20) propositions of error in his appeal. These propositions will be addressed in the order in which they arose at trial.

### JURY SELECTION

¶ 10 In his first assignment of error, Appellant contends the trial court erred in excusing prospective juror Downey for cause. "The proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Patton v. State,* 973 P.2d 270, 281–282 (Okl.Cr.1998), *cert. denied,* 528 U.S. 939, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999) *quoting Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). A juror's bias need not be proved with "unmis-

takable clarity;" neither must the juror express an intention to vote against the death penalty "automatically." *Id.* at 282. Determination of a juror's bias often cannot be reduced to a question and answer session. *Id.* Despite the lack of clarity in the written record, there are situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. *Id.* This Court will look to the entirety of the juror's *voir dire* examination to determine if the trial court properly excused the juror for cause. *Id.* As the trial court personally observes the jurors and their responses, this Court will not disturb its decision absent an abuse of discretion. *Id.*

¶ 11 When asked by the trial court whether she could be an impartial juror, Ms. Downey replied she didn't think she could because she did not believe in the death penalty. She stated it would bother her the rest of her life to impose the death penalty. The trial court then attempted to clarify the issue by stating that the issue was not whether it would bother her, but whether her views were such that it would prevent her or substantially impair her from imposing the death penalty, should the law and the evidence warrant. Ms. Downey answered in the affirmative. She was then excused for cause. (Tr. Vol.III, pg.309–310).

¶ 12 Specifically, Appellant contends it was never ascertained whether or not Ms. Downey could follow the law despite her views or set them aside. Appellant argues it was error for the trial court to ask whether the prospective juror's views would substantially impair her from imposing the death penalty. He contends this is not the equivalent of asking whether her views would substantially impair her from following the law.

■ ¶ 13 The Oklahoma Uniform Jury Instructions—Criminal set forth the questions and answers a trial judge should ask when death qualifying a jury. *See* OUJI–CR (2d) 1–5. The uniform instructions do not include the "substantially impair" language. While the better approach in examining potential jurors regarding the punishments in a capital murder case is to use the *voir dire* questions in the order set forth in the uniform instructions, we find the manner in which the trial court conducted *voir dire* in this case was not error. *See Brown v. State,* 989 P.2d 913, 923 (Okl.Cr.1998). The trial court's questions to Ms. Downey sufficiently established that she could neither consider nor impose the death penalty in a case where the evidence and law warranted its imposition. Her unequivocal statements that she did not believe in and would not impose the death penalty under any circumstances allowed the trial court to determine whether her views would prevent or substantially impair the performance of her duties. *See Patton,* 973 P.2d at 282–283; *Le v. State,* 947 P.2d 535, 545 (Okl.Cr.1997), *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). While the trial court did not specifically ask Ms. Downey whether she could follow the law despite her beliefs or set those beliefs aside, it is clear from her responses to other questions that she was irrevocably committed to vote against the death penalty, regardless of what the evidence and law warranted. Accordingly, the trial court did not err in excusing Downey for cause.

¶ 14 Appellant further argues the trial court erred in refusing him the opportunity to further question and rehabilitate Ms. Downey. At trial, defense counsel asked to rehabilitate the prospective juror on the grounds it was incumbent on the court to ask her if she could set her beliefs aside. The objection was overruled.

■■ ¶ 15 The manner and extent of *voir dire* rests within the discretion of the trial court. *Banks v. State,* 701 P.2d 418, 423 (Okl.Cr.1985), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992). When the proper questions have been asked by the trial court to determine whether prospective jurors can sit in the case, it is not error to deny defense counsel an opportunity to rehabilitate the excused jurors. *Scott v. State,* 891 P.2d 1283, 1289–1290 (Okl.Cr.1995), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 735 (1996).

■ ¶ 16 Reviewing the record before us in this regard we do not find any abuse of judicial discretion. The trial court's questions were adequate to determine whether

Ms. Downey could sit as a fair and impartial juror in this case. Accordingly, it was not error to deny defense counsel the opportunity to make further inquiry. *See Trice v. State,* 853 P.2d 203, 209 (Okl.Cr.1993), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993). This assignment of error is denied.

### FIRST STAGE ISSUES CLAIMS OF PROSECUTORIAL MISCONDUCT

¶ 17 In his second assignment of error, Appellant contends he was denied a fair trial by prosecutorial misconduct. Specifically, he complains about the following comment made during the prosecution's first stage closing argument.

> So ladies and gentlemen, all I ask you to do is consider the evidence when you go back there, but realize that this case is really about sentencing. There is no question about guilt.

¶ 18 Defense counsel's objection to the comment was sustained. The trial judge admonished the jury to disregard the comment, and told the jury that "this is about guilt." Appellant now argues on appeal that in spite of the admonishment, the error is reversible when considered in conjunction with trial counsel's failure to challenge guilt.

 ¶ 19 A trial court's admonition to the jury to disregard the remarks of counsel usually cures any error unless it is of such nature, after considering the evidence, that the error appears to have determined the verdict. *Al–Mosawi v. State,* 929 P.2d 270, 284 (Okl.Cr.1996), *cert. denied,* 522 U.S. 852, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997). The comment in question was made during the second portion of the State's closing argument. It was an isolated remark which was not repeated. Except for the statement in question, the prosecutor's closing arguments were proper comments on the evidence and on the jury's duty to determine whether the State had met its burden of proof beyond a reasonable doubt.

¶ 20 Contrary to Appellant's claim, the presumption of innocence was not violated. No remark was made that the presumption of innocence did not apply. Further, the jury received specific written instructions on the presumption of innocence and the State's burden of proof. The jury was specifically told what the attorneys said in closing argument was purely argument and not evidence to be considered in reaching their verdict. Viewing the comment and the admonishment in context of the trial, the comment was not outcome determinative and the trial court's admonition was sufficient to cure any error. Contrary to Appellant's claim, counsel did challenge guilt in this case, thereby reducing any negative impact this comment may have had on the trial. This assignment of error is denied.

### FIRST STAGE JURY INSTRUCTIONS
### A.

¶ 21 In his third assignment of error, Appellant challenges the jury instructions given during the guilt stage of trial. Initially, he contends the trial court erred in failing to give his requested instructions on second degree depraved mind murder, second degree felony murder and first degree manslaughter.

 ¶ 22 The determination of which instructions shall be given to the jury is a matter within the discretion of the trial court. *Patton,* 973 P.2d at 288. Absent an abuse of that discretion, this Court will not interfere with the trial court's judgment if the instructions as a whole, accurately state the applicable law. *Id.* "[A]ll lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence." *Shrum v. State,* 991 P.2d 1032, 1036 (Okl.Cr. 1999).[2] In determining the sufficiency of the evidence to support a lesser offense we look at whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser. *See Hogan v. Gibson,* 197 F.3d 1297, 1305 (10th Cir.1999).

---

2. While I disagree with this Court's failure to adhere to precedent in *Shrum,* I accede to its application in this case based upon the doctrine of *stare decisis. Shrum,* 991 P.2d at 1037–39 (Lumpkin, V.P.J. concurring in result).

With these rules of law in mind, we review Appellant's allegations.

¶ 23 Murder in the second degree occurs "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." 21 O.S.1991, § 701.8(1). Appellant initially argues that "lack of intent to kill" is not an element of the offense of second degree murder. This Court has consistently held that second degree depraved mind murder is applicable where there is no premeditated intent to kill any particular person. *See Phillips v. State*, 989 P.2d 1017, 1034 (Okl.Cr. 1999), *cert. denied*, —— U.S. ——, 121 S.Ct. 97, 148 L.Ed.2d 56 (2000); *Boyd v. State*, 839 P.2d 1363, 1367 (Okl.Cr.1992), *cert. denied*, 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Foster v. State*, 714 P.2d 1031, 1039–40 (Okl.Cr.1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). We find Appellant's arguments to revisit the issue are not persuasive.

¶ 24 The evidence in the present case does not support the conclusion that Appellant acted without any premeditated design to effect death. Appellant took a butcher knife from his home, placed it in a box with a pair of gloves and a roll of duct tape and went to the deceased's home to meet her at the appointed time. Appellant and the deceased had met previously and would recognize each other on sight. The deceased was stabbed within five minutes of Appellant's arrival at her home. The butcher knife was driven approximately seven inches into the deceased's body. The ensuing wound was the result of a rapid, hard thrust of the knife into the body with only the handle of the knife visible. This evidence is sufficient for any rational trier of fact to find Appellant acted with the premeditated intent to kill the deceased.

¶ 25 Appellant disputes the conclusion of premeditation and argues the evidence showed no reason for the victims to feel threatened when he entered their home, therefore there was no evidence to suggest that he formed the intent to kill in advance. Premeditation sufficient to constitute murder may be formed in an instant, or it may be formed instantaneously as the killing is being committed. *Phillips*, 989 P.2d at 1029. It may be inferred from the fact of the killing, unless circumstances raise a reasonable doubt whether such design existed. *Freeman v. State*, 876 P.2d 283, 287 (Okl.Cr.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). The evidence clearly supports a finding that when Appellant stabbed the deceased, he did so with the intent to kill her, regardless of whether that intent was formed prior to or after arriving at her home. Accordingly, instructions on second degree depraved mind murder were not warranted, as that crime was not supported by the evidence.

¶ 26 The defense also requested jury instructions on second degree felony murder based upon the underlying felonies of attempted kidnapping and attempted rape. These instructions were rejected by the trial court. Now on appeal, Appellant admits these proposed instructions "missed the mark" as they relied on felonies which fell under the first degree felony murder statute, 21 O.S.Supp.1996, § 701.7(B). Appellant argues the appropriate felony upon which to base a second degree felony murder instruction is assault with intent to commit a felony. *See* 21 O.S.1991, § 681. Appellant contends his request for second degree felony murder instructions based upon attempted kidnapping and attempted rape was adequate to prompt the trial court to instruct on second degree felony murder based upon assault with intent to rape or kidnap. He further argues that as the defense repeatedly pressed for some kind of lesser offense instruction that would give the jury a noncapital option, had the trial court offered to instruct on second degree felony murder based on assault with intent to rape or kidnap, the defense would have readily adopted that alternative.

¶ 27 Initially, we find Appellant has waived all but plain error review by his failure to request instructions on second degree felony murder based upon assault with intent to rape or kidnap. *Cheney v. State*, 909 P.2d 74, 90 (Okl.Cr.1995). In a criminal

prosecution, the trial court has the duty to correctly instruct the jury on the salient features of the law raised by the evidence without a request by the defendant. *Wing v. State,* 280 P.2d 740, 747 (Okl.Cr.1955). *See also Atterberry v. State* 731 P.2d 420, 422 (Okl.Cr.1986). However, the trial court's duty extends only to those instructions which are supported by the evidence introduced during the trial. *Rawlings v. State,* 740 P.2d 153, 160 (Okl.Cr.1987). Here, there was no evidence to support the requested instruction.[3]

■ ¶ 28 At the close of the first stage of trial, no evidence had been introduced as to an assault with intent to rape or kidnap. During the first stage of trial, the State's evidence showed Appellant went to Hand's home with a box containing a knife, gloves and duct tape. No evidence was introduced by the State or brought out by the defense on cross-examination that Appellant had any intent other than the intent to kill the deceased. It was not until the second stage of trial, through Dr. Peterson's expert testimony, that any evidence concerning Appellant's intent to rape or kidnap the deceased was introduced. Therefore, first stage instructions as to second degree felony murder based upon assault with intent to rape or kidnap were not warranted and were properly omitted from the jury's consideration.

¶ 29 Homicide is manslaughter in the first degree when "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon ..." 21 O.S.1991, § 711(2). Appellant argues the inclusion of heat of passion as an element of first degree manslaughter by means of a dangerous weapon is questionable. This argument has been previously rejected in *Ledbetter v. State,* 933 P.2d 880, 888 (Okl.Cr.1997) wherein we stated "the applicable case is *Brown v. State,* 777 P.2d 1355, 1357 (Okl.Cr.1989), where we held heat of passion is an element

of the jury instruction for first degree manslaughter by means of a dangerous weapon."

■ ¶ 30 "The elements of heat of passion are: 1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage or resentment; 3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection between the provocation, passion and homicide." *Charm v. State,* 924 P.2d 754, 760 (Okl.Cr.1996); *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). Appellant concedes "there [was] no evidence to indicate the victim conducted herself in a manner described by the provocation doctrine." Our review of the evidence supports that conclusion. Further, our review of the evidence shows nothing to support the other elements of first degree manslaughter. Therefore, an instruction on first degree manslaughter was not warranted, as it was not supported by the evidence.

¶ 31 In his final argument in this assignment of error, Appellant asserts that by failing to instruct the jury on any lesser forms of homicide, the trial court failed to provide the jury with the option of convicting him of a non-capital offense as required by *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). This same argument was raised and rejected in *Valdez v. State,* 900 P.2d 363, 378–379 (Okl.Cr.1995), *cert. denied,* 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995) wherein we stated:

Neither *Beck v. Alabama* nor *Schad v. Arizona* [501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ] require that a jury in a capital case be given a third, non-capital option where the evidence absolutely does not support that option. The evidence in this case did not support a second degree murder instruction and the jury was thus properly precluded from considering that particular non-capital option.

3. The defense filed a motion *in limine* requesting the State be prohibited from arguing in first stage closing argument that Appellant had intended to commit a rape against either Hand or Hill or kidnap either victim. The trial court overruled the motion, finding it fair comment on the evidence to "suggest to the jury or to ask the jury rhetorically what he was doing." However, during closing argument, no argument was made that the evidence inferred Appellant went to the victims' home with the intent to rape or kidnap.

*See also Phillips,* 989 P.2d at 1035. Similarly, the evidence in the present case did not support instructions on any lesser forms of homicide.

¶ 32 Further, in *Le,* 947 P.2d at 547, this Court stated that *Beck* is not applicable in Oklahoma as the Oklahoma death penalty scheme allows the jury to choose between acquittal, life, life without parole, or death. As Oklahoma law provides viable options between acquittal and death, the jury had the opportunity to express doubts about Appellant's culpability during the sentencing phase. *Id.*

¶ 33 Therefore, for the reasons discussed above, we find the trial court did not err in omitting instructions on any lesser forms of homicide. This assignment of error is denied.

### B.

¶ 34 In his fourth assignment of error, Appellant contends the trial court failed to adequately instruct the jury on the definition of "malice." Specifically, Appellant argues the trial court failed to set forth the statutory definition of malice. In support of his argument he refers to the Committee Comments for OUJI–CR (2d) 4–63. Therein it is stated that the language of § 701.7 from title 21 was largely adapted from the Georgia Criminal Code and that the Georgia Code addressed express malice and implied malice. However, the Oklahoma Legislature adopted only that portion of the Georgia statute referencing express malice. Appellant argues the failure to provide the jury with a definition of implied malice improperly lowered the State's burden and allowed a conviction on a basis broader than the allowed by statute.

¶ 35 The defense neither objected to the lack of an instruction on implied malice nor proposed such an instruction. Therefore, we review only for plain error. *Cheney,* 909 P.2d at 90.

¶ 36 The jury was given the uniform jury instructions in this case. Instruction No. 16 set forth the statutory elements of the crime of first degree murder pursuant to OUJI–CR (2d) 4–61. Instruction No. 17 set forth the definition of "malice aforethought" as follows:

"Malice aforethought" means a deliberate intention to take away the life of a human being. As used in these instructions, "malice aforethought" does not mean hatred, spite or ill-will. The deliberate intent to take a human life must be formed before the act and must exist at the time a homicidal act is committed. No particular length of time is required for formation of this deliberate intent. The intent may have been formed instantly before commission of the act.

OUJI–CR (2d) 4–62. This definition of malice aforethought is consistent with that set forth in 21 O.S.1991, § 701.7(A). That section provides:

A. A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

¶ 37 Further, in Instruction No. 18, the jury was instructed on the consideration to be given external circumstances surrounding the commission of a homicidal act. *See* OUJI–CR (2d) 4–63.

¶ 38 These instructions adequately instructed the jury on the law of first degree malice aforethought murder. *See Johnson v. State,* 928 P.2d 309, 316 (Okl.Cr.1996) (the giving of the uniform jury instructions—1st edition—regarding first degree murder adequately instructed the jury on the elements of the offense and the State's burden.) In enacting § 701.7(A), the Legislature specifically rejected the theory of implied malice. Consequently this Court has never required a finding by the jury of or an instruction to the jury regarding implied malice. We decline to make such a ruling today. As the jury was properly instructed in this case, this assignment of error is denied.

### SECOND STAGE ISSUES
#### A.

¶ 39 In his fifth assignment of error, Appellant contends the trial court erred in de-

nying his motion to trifurcate the trial proceedings. The record reflects that prior to the second stage of trial, Appellant filed a Motion to Hold Trifurcated Trial, specifically requesting the sentencing on Count II, the non-capital offense, be resolved first, and capital sentencing on Count I follow thereafter. The trial court overruled the motion, but offered to trifurcate the trial by conducting a capital sentencing stage first and a non-capital sentencing second. The court explained that it felt the jury could be appropriately instructed and could be trusted to follow its instructions concerning sentencing, out-of-state witnesses were present and ready to testify, and no "real danger of potential harm" was evident. The defense stood on its motion and declined the court's offer. *supra.*

¶ 40 We have reviewed our case law and have found no cases specifically on point. In a footnote in *Jones v. State*, 899 P.2d 635, 640 n. 1 (Okl.Cr.1995) the Court noted "the trial was conducted in three stages, guilt/innocence, punishment for all non-capital crimes and punishment for murder in the first degree." *Id.*[4] However, the propriety of the three stage trial was not raised on appeal.

¶ 41 In *Perryman v. State*, 990 P.2d 900, 905 (Okl.Cr.1999) the Court found the combining into one sentencing proceeding of a capital murder count with non-capital non-enhanced offenses was error.[5] This Court explained "[b]ecause we have held that sentencing juries in unenhanced, non-capital crimes should not be exposed to evidence of statutory aggravating circumstances or vic-

tim impact evidence, we find error occurred in the instant case...." *Id.*

¶ 42 While *Perryman* addressed the division of sentencing issues, the fact that it involved non-capital non-enhanced offenses distinguishes it from the present case. In *Perryman*, none of the evidence admitted during the second stage was relevant to the determination of the proper punishment for the non-capital offenses. In the present case, evidence of Appellant's prior convictions was relevant to the jury's decision whether the punishment in Count II should be enhanced and in proving the aggravating circumstance of "prior violent felony."

¶ 43 The procedure used in this case was not prohibited by statute. *See* 22 O.S. 1991, § 860 (now 22 O.S.Supp.1999, § 860.1) (requires a bifurcated trial for second and subsequent offenses in which evidence of former convictions is to be admitted) and 21 O.S.Supp.1992, § 701.10 (provides for a separate sentencing proceeding upon conviction of first degree murder when the death penalty is an option). Nor was it unduly prejudicial due to the trial court's limiting instructions. The jury was specifically instructed that in reaching its decision on punishment for Count II they were to consider only the evidence incorporated from the first stage and evidence pertaining to the prior convictions. They were specifically instructed not to consider the victim impact evidence or evidence supporting the aggravating circumstances.[6] Further, the jury was specifically instructed as to the prior convictions alleged

---

4. Jones was convicted of capital murder and three non-capital offenses. No prior convictions were alleged. He was sentenced to the death penalty for the murder conviction and a term of years imprisonment for the non-capital offenses.

5. Perryman was convicted of first degree murder and two non-capital offenses. No prior convictions were alleged with the non-capital offenses. He was sentenced to life imprisonment without the possibility of parole for the murder conviction and a term of years imprisonment for the non-capital offenses. On appeal, the appellant argued he was denied a fair sentencing hearing on his non-capital offenses because the jury rendered the maximum sentences on the non-capital offenses following the second stage of trial after it heard evidence in support of the aggravating circumstances alleged in the Bill of Particulars

and victim impact evidence. The record showed the trial court submitted only the issue of guilt/innocence during first stage and the issue of punishment for all offenses during second stage.

6. Instruction No. 22A provided:

In determining the appropriate sentence in Count 2, Assault and Battery with Intent to Kill, you may only consider evidence incorporated from the first stage of trial and evidence pertaining to the State's allegations of previous convictions. You cannot consider evidence of prior bad acts by the defendant which have not resulted in conviction, evidence of the underlying facts of the alleged former convictions, aggravating evidence or circumstances, or victim impact evidence, while determining the suitable punishment for Count 2.

by the State and the State's burden of proof beyond a reasonable doubt. These instructions were specific enough to clearly channel the jury's decision-making process between the non-capital and the capital offenses.

 ¶ 44 Appellant argues the limiting instruction was one the jury "couldn't humanly follow." It is well established that juries are presumed to follow their instructions. *United States. v. Carter*, 973 F.2d 1509, 1513 (10th.Cir.1992), *cert. denied*, 507 U.S. 922, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993); *Turrentine v. State*, 965 P.2d 955, 968 (Okl.Cr.), *cert. denied*, 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998) *citing Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993). The instructions here were clear, explicit and unambiguous. There is nothing in the record to indicate the jury could not follow these instructions.

 ¶ 45 As discussed later in this opinion, the death penalty was adequately supported by aggravating circumstances which outweighed the mitigating evidence. The ninety-nine year sentence for Count II was also supported by the evidence of the prior convictions and the facts of the assault with intent to kill committed on Elizabeth Hill.[7]

¶ 46 Appellant further argues that by combining the sentencing proceedings for the capital and non-capital offense, he was deprived of the ability to argue to the jury that he should not be sentenced to death because he had already been given a severe sentence in Count II. Neither the procedure used in this case nor the court's instructions limited counsel's ability to argue for the lightest

possible sentence in either count. Appellant's argument, that the jury did not have enough information in making its sentencing determination in Count I, is the converse of his above argument that the jury had too much information in making the sentencing determination in Count II. However, neither argument prevails.

¶ 47 The jury had before it all of the necessary information in order to render a decision as to the death penalty. Contrary to Appellant's claim, it is not evident what additional information would have been before the jury in deciding the appropriateness of the death penalty had the jury sentenced Appellant first for the non-capital offense. Any evidence of his future dangerousness or lack thereof because of incarceration, together with the prior violent felonies, was properly before the jury in making their sentencing determination as to Count I.

¶ 48 The jury's consideration of any information additional to that needed for sentencing in Count II was specifically limited. Here, the jury merely had, at one time, all of the information it needed for sentencing in both counts, and that consideration was specifically channeled by limiting instructions. The only difference between Appellant's requested trifurcated procedure and the procedure used by the trial court was that the jury was required to retire and deliberate only twice instead of three times. The practicalities of requiring a jury to retire and deliberate more than twice and the presence of out-of-state witnesses were relevant considerations for the trial court. The trial court appropriately balanced those considerations

---

7. In footnote 4 of his appellate brief, Appellant raises the transactional nature of three of his prior convictions. In Case No. CR–92–452–1, Appellant was found guilty of first degree rape, first degree kidnapping, first degree battery, and first degree burglary in the State of Arkansas. These offenses occurred in one incident. The issue of the transactional nature of the offenses was raised in Appellant's motion to trifurcate and again at the beginning of the second stage of trial. Appellant's objection to the admission of three of the prior convictions on the basis they arose from the same transaction was overruled. The trial court admitted the prior convictions under the caveat it would be decided later whether they should be redacted or whether the

jury could be adequately instructed to consider the offenses in Case No. CR–92–452–1 as one conviction. The prior convictions were not redacted in any way and the trial court ultimately instructed the jury to consider the convictions in Case No. CR–92–452–1 as one conviction. The other prior conviction, also out of Arkansas, Case No. CR–92–481–1 was for first degree rape.

Under 21 O.S.1991, § 51.B (now 21 O.S.Supp. 1999, § 51.1) it was error for the trial court to admit all of the convictions listed in Case No. CR–92–452–1. However, the limiting instruction properly advised the jury as to the consideration to be given the prior convictions. This cured any error.

with Appellant's right to a fair sentencing proceeding.

¶ 49 Accordingly, due to the specific limiting instructions used by the court, we find no error in the trial court's combining the sentencing for the capital offense with the non-capital enhanced offense into one proceeding. Neither the death penalty nor the ninety-nine year sentence warrant modification on this ground. This assignment of error is denied.

### B.

¶ 50 In his seventh assignment of error, Appellant contends the testimony of witness Yolanda Cunningham was unduly prejudicial due to lack of notice and emotional outbursts. Cunningham testified that between July 5 and July 8, 1992, Appellant raped her four times while she was held in his apartment and not allowed to leave. She also testified to a separate incident which occurred when she five months pregnant when Appellant "put me down on the ground." "You don't tell me about hurt. It took me seven years to get over that." Defense counsel objected, in part, on the basis no pre-trial notice had been received of any rape committed when Cunningham was five months pregnant. The objection was overruled.

¶ 51 The State's Notice of Evidence in Aggravation stated in part:

Yolanda Cunningham will testify that between July 5, 1992, and July 8, 1992, the Defendant raped her four (4) times. During this time she was held in Defendant's apartment and not allowed to leave.... She will testify that he raped her before but she never reported it. She will testify that he had hit her at least once during their relationship....

¶ 52 It is not clear from Cunningham's testimony whether the incident which occurred when she was pregnant was a rape or an assault. In either case, the State's notice was sufficient to put Appellant on notice that Cunningham would testify to more than just the four rapes in July 1992. See Mayes v. State, 887 P.2d 1288, 1299 (Okl.Cr.1994), cert. denied, 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

¶ 53 Cunningham was a somewhat emotional witness who on at least one occasion shouted over the voice of the trial judge in an attempt to be heard. The record reflects all parties were aware of the possible volatility of her testimony. The prosecutor indicated her intent to limit her questioning of the witness and the trial judge indicated he would cut off any non-responsive answers. In its first questions to the witness, the State established she was on medication. She testified to the July 13, 1992, attack on Mike Applebury and the series of rapes occurring between July 5 and July 8, 1992. She then testified that on another occasion Appellant vandalized her apartment. This incident was not covered in the State's notice of aggravating evidence. Appellant's objection was sustained and the jury admonished to disregard the statement. This admonishment cured any error. See Al–Mosawi, 929 P.2d at 284.

¶ 54 After Cunningham testified to the incident which occurred when she was pregnant, the trial court recessed and admonished the witness to answer only the question asked of her and not to talk over the court. Defense counsel's request for a mistrial was overruled. The trial judge noted for the record the witness was emotional and that she was being treated for a mental illness. The prosecution indicated it was not going to ask any further questions and risk another emotional outburst. Both Cunningham and the jury were returned to the courtroom, both parties indicated no further questions and the witness was excused.

¶ 55 Appellant finds error in the trial court's failure to admonish the jury, but also argues such admonishment would have been ineffectual as the evidence was so prejudicial that the jury could not disregard it in reaching its verdict. No admonishment was requested by Appellant, therefore our review is limited to plain error. Smith v. State, 932 P.2d 521, 532 (Okl.Cr.1996).

¶ 56 In Ellis v. State, 867 P.2d 1289, 1297 (Okl.Cr.1992), cert. denied, 513 U.S. 863, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994) the appellant objected to an emotional outburst from one of the victim's relatives in the courtroom. This Court noted the record showed that the

trial court sent the jury out of the courtroom immediately, and the disruptive spectators were escorted out of the room by members of their family. In rejecting the claim of error, this Court stated "the incident was of short duration and the trial court took appropriate measures to prevent any unfair prejudice." *Id.*, 867 P.2d at 1297.

¶ 57 In the present case, the trial court interrupted Cunningham's emotional outburst and recessed the proceeding. After an *in-camera* hearing, both the witness and the jury were brought back into the courtroom, and in front of the jury the witness was excused from further questioning. We find this incident was of short duration and the trial court's measures appropriately reduced the risk of undue prejudice to Appellant. The omission of an admonishment to the jury was not plain error, and in fact appropriate as it could have drawn undue attention to the witness's outburst. Accordingly, this assignment of error is denied.

### VICTIM IMPACT EVIDENCE

¶ 58 In his sixth assignment of error, Appellant asserts the victim impact evidence violated his constitutional rights as it was emotionally weighted testimony, hearsay, and testimony from more than one witness. Victim impact evidence is constitutionally acceptable unless "it is so unduly prejudicial that it renders the trial fundamentally unfair. . . ." *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720, 735 (1991). In *Cargle v. State*, 909 P.2d 806, 827–28 (Okl.Cr.1995), *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996) this Court set out the basis the United States Supreme Court utilized to find the Eighth Amendment is not violated by victim impact evidence and that the Fourteenth Amendment has the potential to be implicated if appropriate restrictions are not placed on victim impact evidence. In *Cargle*, 909 P.2d. at 828, we stated:

> The statutory language [22 O.S.Supp.1993, § 984] is clear the evidence should be restricted to the "financial, emotional, psychological, and physical effects," or impact, of the crime itself on the victim's survivors; as well as some personal characteristics of

the victim. So long as these personal characteristics show how the loss of the victim will financially, emotionally, psychologically, or physically impact on those affected, it is relevant, as it gives the jury "a glimpse of the life" which a defendant "chose to extinguish," . . . However, these personal characteristics should constitute a "quick" glimpse, and its use should be limited to showing how the victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed. (internal citations omitted).

¶ 59 On the first day of the punishment phase of trial, the defense filed a Motion to Preclude Victim Impact Evidence, which in part, requested a hearing pursuant to *Cargle*. A hearing was held wherein the court indicated it had reviewed the statements prepared by Hand's parents, Stephen Hand and Brenda Monroe, and excised out certain portions of each statement which were not relevant victim impact evidence. The court also overruled Appellant's request to limit the number of victim impact witnesses to one. Hand's parents then testified by reading their prepared statements and answering a few questions.

¶ 60 At trial, and now on appeal, Appellant objects to comments in Ms. Monroe's statement concerning: (1) the grief she felt because she would never have the grandchildren she longed for, (2) that part of her died when her child died and "a piece of her heart [had] been cut out and was buried with her when she was stabbed to death.", (3) the murder of her "precious child", (4) reminiscences of the victim's activities in high school, and (5) her fear of losing her daughter's pictures, of being attacked, and of losing her husband and parents.

¶ 61 Many of the comments challenged by Appellant as being too emotional also illustrated the psychological impact on Ms. Monroe of losing her daughter. As the trial court noted, it can be difficult to distinguish between what is emotional and what is psychological, and even what is physical. Ms. Monroe's statements concerning her hysterical reaction when informed of her daughter's death and the ensuing psychotherapy,

physical illnesses, and depression were properly admitted as relevant to showing how the victim's death emotionally, psychologically, and physically affected her mother. Contrary to Appellant's argument, Ms. Monroe's fears of losing her daughter's pictures, of being attacked, and of losing her husband and parents were not so tenuous to the homicide as to lack probative value.

¶ 62 Ms. Monroe's descriptions of her daughter as her "baby" and "precious child" were emotional but did not "tap[ ] into the rage jurors feel when children are victimized" as Appellant argues. The jury knew the twenty-two year old victim was the witness's offspring yet they also knew she was not a child in the legal sense of the term. Comments about the victim's activities in high school were not relevant as they did not show the impact of the victim's death on her survivors. However, the reference was brief and did not prevent the jury from fulfilling its function in the second stage of trial of returning a verdict based upon a reasoned moral response.

¶ 63 Appellant also contends the victim impact evidence contained inadmissible hearsay. In her prepared statement, Ms. Monroe stated that in January 1997, her daughter took a taxi to a grocery store, purchased several bags of food and then delivered, by cab, the food to a homeless shelter. Ms. Monroe stated she did not know about her daughter's act at the time and only found out about it after her death when she found the receipts in her things. The defense objected to this statement as hearsay and a hearing was held to determine the basis of Ms. Monroe's knowledge. Monroe stated her daughter had told her about taking the food to the homeless shelter but she had forgotten until she went through her daughter's possessions. The trial court found the statement was not hearsay as it relied on Ms. Monroe's own perception in finding the receipts. The comment was edited to strike any reference to the taxicab.

¶ 64 Ms. Monroe's statement was not hearsay as it was not offered to prove the truth of the matter asserted—that the victim actually delivered food to the homeless. *Chambers v. State,* 649 P.2d 795, 798 (Okl.Cr.

1982) (if the purpose for which the statement is offered is not to establish any assertion made by the challenged evidence, it is not hearsay). *See* 12 O.S.1991, § 2801(3). The statement was based upon her own personal knowledge, having found the receipts, and provided a brief glimpse of the unique characteristics of the individual known as LeAnna Beth Hand.

¶ 65 While a portion of the victim impact testimony was very emotional, taken as a whole, the testimony was within the bounds of admissible evidence, and its emotional content did not have such a prejudicial effect or so skew the presentation as to divert the jury from its duty to reach a reasoned moral decision, based on reliable evidence, whether to impose the death penalty.

¶ 66 Finally, Appellant contends this Court should adopt a rule similar to that set forth by the state of New Jersey that absent exceptional circumstances, victim impact testimony should be limited to one witness. Appellant argues that a "parade of witnesses must not be empowered to force itself into capital sentencing proceedings...." In 22 O.S.Supp.1992, § 984.1 the Legislature stated that any family member who wishes to appear personally "shall have the absolute right to do so." This Court has attempted to channel the jury's discretion in considering victim impact evidence by enacting specific instructions to be given to the jury in the event victim impact evidence is presented. These instructions state, in part, that consideration of the evidence must be limited to a moral inquiry into the culpability of the defendant, not an emotional response to the evidence. *Cargle,* 909 P.2d at 829. In light of our state statute, it is not for this Court to set a limit on the number of victim impact witnesses. However, the statutory language defining victim impact evidence and the jury instructions enacted by this Court effectively limit the presentation of victim impact evidence so that it will not end up a mere parade of emotions.

¶ 67 In the present case, the victim impact evidence consisted of two witnesses, and comprised approximately twelve pages of transcript. This was not a situation in which the victim impact evidence could be called

excessive. There is nothing in the record to indicate permitting both of the victim's parents to testify disrupted the jury's reasoned process of determining the appropriate punishment in this case. Accordingly, we find the victim impact evidence as a whole was properly admitted in this case. As discussed further in the Mandatory Sentence Review, the admission of any improper statements was harmless beyond a reasonable doubt as it had no impact on the outcome of the sentencing proceeding. Therefore, this assignment of error is denied.

### AGGRAVATING CIRCUMSTANCES

#### A.

¶ 68 Appellant raises several challenges to the continuing threat aggravator in his eighth, twelfth, and seventeenth assignments of error. Appellant contends in his eighth assignment of error that evidence of harassing phone calls was improperly admitted in support of the continuing threat aggravating circumstance. During the second stage, the State presented the testimony of Michelle Sauser concerning harassing phone calls she had received. She stated that she and her husband purchased meat from Appellant in February 1997 and shortly thereafter she began to get nuisance phone calls. She received the calls from two to ten times a day over an eight week period. For the first week, the calls came four or five times a day and the caller would immediately hang up. Over time, the caller began to groan and moan. Eventually, the caller began to talk and whisper and stated that he wanted to have sex with her and be with her at any cost. The caller also said he wanted to tie her up and perform certain sexual acts Ms. Sauser found offensive. The caller said he wanted to taste her blood. Eventually, a tap was placed on Ms. Sauser's phone by the police and she recognized the voice as that of Appellant. When she confronted Appellant with her identification, he hung up. The call was traced to a pay phone and eventually to Appellant. Sauser did not receive any further calls. A week later LeAnna Hand was killed.

¶ 69 Appellant argues this evidence did not show a pattern of violent conduct which was likely to continue in the future. He argues the comments made over the phone were in the context of a sexual fantasy with no threats to kidnap, rape or otherwise do violence to Sauser. Appellant's motion in *limine* to exclude evidence of the harassing phone calls and his objections during Ms. Sauser's testimony were overruled.

¶ 70 Title 21 O.S.1991 § 701.12 sets forth the continuing threat aggravator as follows: "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." To support this aggravator, the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future. *Turrentine*, 965 P.2d at 977. Evidence of unadjudicated bad acts is admissible in a capital case to prove a defendant constitutes a continuing threat to society. *Douglas v. State*, 951 P.2d 651, 675 (Okl.Cr.1997), *cert. denied*, 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998).

¶ 71 Appellant's characterization of his conduct as non-violent is not accurate. While his phone calls might not have had any explicit references to crimes such as kidnapping or rape, the acts described by Appellant, sexual and otherwise, were not consensual and would only be accomplished by overcoming Ms. Sauser's will. Such conduct would therefore be criminal. The phone calls demonstrate a willingness and propensity on the part of Appellant to engage in criminal behavior that puts other people at risk.

¶ 72 Further, the evidence was properly admitted when considered with Dr. Peterson's testimony of Appellant's conduct while in jail. Dr. Peterson testified that while incarcerated in the Arkansas Department of Corrections from 1993 to 1996, Appellant continued to have sexual fantasies. These fantasies included vulgar talk and phone sex to female guards while he was a trustee. Upon his release, Appellant sent a sexually explicit note to the counselor who was treating him for his sexual problems. Dr. Peterson also testified Appellant's fantasies contin-

ued after his release and included women who purchased meat from him. This evidence, combined with the phone calls made to Ms. Sauser only weeks before Hand's murder, shows a pattern of escalating violent sexual conduct which supports the jury's finding of the probability of future dangerousness which constitutes a continuing threat to society.

■■■ ¶ 73 Appellant further complains that Ms. Sauser's testimony was more prejudicial than probative under 12 O.S.1991, § 2403. Section 2403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." Here, Ms. Sauser testified Appellant's phone calls placed her in such fear that she was afraid to leave the house, she was afraid for her children and that she would wake up in the middle of the night assuming the caller was in her home. Appellant's objection came after this testimony was given. The trial court ruled that had the objection been made timely it would have been sustained on grounds of relevancy, however, coming late as it did, all the court could say was that was the end of such testimony.

■■■ ¶ 74 Under 12 O.S.1991, § 2401 relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ms. Sauser's testimony concerning her reactions to the phone calls did not make it more probable that Appellant was the caller. The testimony did run the risk of confusing the jury as to who exactly was the victim in the case on trial. However, in light of the other evidence presented in support of the aggravator, the error in admitting the testimony was harmless as it did not result in a miscar-

riage of justice, or constitute a substantial violation of a constitutional or statutory right. 20 O.S.1991, § 3001.1 Based upon the foregoing, we find Appellant was not denied a reliable sentencing proceeding by the admission of improper evidence. Accordingly, this assignment of error is denied.

■■■ ¶ 75 In his twelfth assignment of error, Appellant asserts the jury was improperly instructed on the aggravator. The record reflects the jury was given the uniform instruction, Oklahoma Uniform Jury Instruction–Criminal No. 4–74.[8] Relying on *Boyde v. California*, 494 U.S. 370, 379–80, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990) Appellant argues the instruction is ambiguous and subject to an erroneous interpretation as to whether the State was required to prove the probability that he would commit future acts of violence that constitute a continuing threat to society. Appellant admits a challenge to this instruction was raised in *Bland v. State*, 4 P.3d 702, 725 (Okl.Cr.2000). However, he argues the issue in that case was whether the instruction was deficient on its face, while the issue in this case is whether the instruction is so ambiguous there was a reasonable likelihood the jury could have made an invalid interpretation.

¶ 76 In *Boyde*, the issue was whether the appellant's capital sentencing proceedings violated the Eighth Amendment because the trial court's instructions were so ambiguous they failed to allow the jury to consider all relevant mitigating evidence. The Supreme Court stated:

We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction, a capital sentencing

---

8. Instruction No. 15 stated:

The State has alleged that there exists a probability that the defendant will commit future acts of violence that constitute a continuing threat to society. This aggravating circumstance is not established unless the State proved beyond a reasonable doubt:

*First,* that the defendant's behavior has demonstrated a threat to society; and
*Second,* a probability that this threat will continue to exist in the future.

proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such an inhibition.

*Boyde* at 110 S.Ct. at 1198.

¶ 77 In applying the above standard, the Supreme Court reviewed the challenged instruction standing alone and within the context of the proceeding in light of the other instructions given to the jury. The Court concluded there was not a reasonable likelihood that the jurors understood the challenged instructions to preclude consideration of relevant mitigating evidence offered by petitioner. *Id.*, at 1201.

¶ 78 Applying the "reasonable likelihood" standard in the present case, we find OUJI–CR (2d) 4–74 is not ambiguous or subject to erroneous interpretation. Reviewing the instruction itself, we have repeatedly held it is a correct statement of the law which properly channels the discretion of the jury. *Welch v. State*, 2 P.3d 356, 374 (Okl.Cr.2000); *Brown*, 989 P.2d at 932; *Hawkins v. State*, 891 P.2d 586 596 (Okl.Cr.1994), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995). In *Bland*, we rejected challenges that the instruction was deficient for failing to properly set forth the requirement that the jury had to find the defendant would commit "future acts of violence," and that it was overbroad for using the term "probability." This Court stated:

> The first paragraph of the instruction explicitly refers to the allegation that there exists a probability that the defendant will commit future acts of violence. That the subsequently listed two criteria which must be proven do not mention violence does not negate the burden on the State to prove a probability that the defendant will commit future acts of violence that constitute a continuing threat to society as listed in the first paragraph. Reading the instruction in its entirety, it is clear the State had the burden of proving the defendant had a history of criminal conduct that would likely continue in the future and that such conduct would constitute a continuing threat to society. Accordingly, we reject Appellant's challenge to Instruction No. 4–74, OUJI–CR (2d). This assignment of error is therefore denied.

*Bland*, 4 P.3d at 725.

¶ 79 Further, contrary to Appellant's argument, the instruction did not set forth elements of the aggravator. We have previously held that aggravating circumstances do not contain elements to be proven as do criminal offenses. *Phillips*, 989 P.2d at 1041. The uniform instruction on continuing threat, OUJI–CR (2d) 4–74, merely sets out the evidence necessary to support a finding of the aggravator. Therefore, we reject Appellant's argument that the instruction is comparable to an instruction setting out incorrect elements of a criminal offense.

¶ 80 Based upon the foregoing and reading the instruction in its entirety, we fail to find a reasonable likelihood that the jurors interpreted the trial court's instructions to mean that the State did not have the burden of proving the continuing threat had to be of a violent nature. This conclusion is reinforced by looking at the instruction in context of the other instructions given to the jury. Instruction No. 17 informed the jury that the State had the burden of proving beyond a reasonable doubt the aggravating circumstances. (O.R.275) This burden of proof was reiterated throughout the instructions, specifically Instructions No. 7, 11, 12 and 13. Further, evidence presented by the State in support of the aggravator illustrated the violent nature of Appellant's prior attacks. In closing argument, the prosecutor argued the continuing threat aggravator was limited to acts of violence.

¶ 81 When the instruction is read in its entirety and considered in the context of the trial, it seems unlikely the jury would arrive at any interpretation other than the State had to prove beyond a reasonable doubt the probability Appellant would commit future acts of violence. Therefore, we find there is not a reasonable likelihood that the jurors in Appellant's case misinterpreted the instruction. This assignment of error is denied.

¶ 82 In his seventeenth assignment of error, Appellant argues the continuing threat aggravator is unconstitutional as it is vague and overbroad. We have previously upheld the constitutionality of this aggravator find-

ing it neither vague nor overbroad. *See Short v. State,* 980 P.2d 1081, 1103, *cert. denied,* 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (1999); *Hamilton v. State,* 937 P.2d 1001, 1012 (Okl.Cr.1997), *cert. denied,* 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998); *Pennington v. State,* 913 P.2d 1356, 1373 (Okl.Cr.1995), *cert. denied,* 519 U.S. 841, 117 S.Ct. 121, 136 L.Ed.2d 72 (1996); *Walker v. State,* 887 P.2d 301, 320 (Okl.Cr.1994), *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). Further, the Tenth Circuit has also consistently rejected the contention. *See LaFevers v. Gibson,* 182 F.3d 705, 720 (10th Cir.1999); *Nguyen v. Reynolds,* 131 F.3d 1340, 1354 (10th Cir.1997). We decline reconsideration of our previous decisions in this regard. This assignment of error is denied.

### B.

¶ 83 In his tenth, thirteenth and fourteenth assignments of error, Appellant raises challenges to the aggravating circumstance "[t]he murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution." 21 O.S.1991, § 701.12(5). In his tenth assignment of error, Appellant challenges the sufficiency of the evidence supporting the aggravator. To support a finding that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution the State must prove the defendant killed in order to avoid arrest or prosecution. *Patton,* 973 P.2d at 297. There must also be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Id.*

¶ 84 Appellant relies on *Barnett v. State,* 853 P.2d 226, 233–234 (Okl.Cr.1993) to argue that the State failed to prove an underlying predicate crime. In *Barnett,* the defendant was alleged to have committed the crime of murder for the purpose of avoiding lawful arrest or prosecution for the predicate crime of assault and battery. Under the circumstances of the case, this Court found the evidence showed the protracted assault and battery was the ultimate cause of the victim's death. Therefore, the assault and battery was not separate and distinct from the mur-

der itself, but rather was part of a continuing transaction which culminated in the death of the victim. *Id.*

¶ 85 The facts in the present case fit the pattern of *Barnett.* The only evidence presented of the attempted rape was Appellant's statement to his psychiatrist that he intended to rape Hand, but when he pulled out the knife she tried to get away and screamed for her roommate. He further said he stabbed her one time intending only to silence her. Under this evidence, the attempted rape was not separate and distinct from the murder itself, but rather was part of a continuing transaction which culminated in the death of the victim. Because the attempted rape, at a minimum, was a significant contributing cause of the victim's death, Appellant can not be found to have murdered the victim in order to avoid prosecution for the assault and battery. *See Id.* at 234. Accordingly, we find attempted rape, which in this particular case was part of the continuing transaction which resulted in the death of Hand, was not a separate and distinct crime from the murder itself. Accordingly, we must hold that this aggravating circumstance, that "the murder was committed for purposes of avoiding or preventing a lawful arrest or prosecution," fails. The impact of invalidating this aggravating circumstances is discussed in the Mandatory Sentence Review.

¶ 86 In propositions of error thirteen and fourteen Appellant raises further challenges to the "avoid lawful arrest" aggravator. As we have found that aggravator invalid in this case, those propositions of error are now moot.

### C.

¶ 87 In his eleventh assignment of error, Appellant contends the evidence is insufficient to support the aggravator that he knowingly created a great risk of death to more than one person. Appellant's objections at trial have adequately preserved the issue for appellate review.

¶ 88 "When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is

whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Romano v. State*, 847 P.2d 368, 387 (Okl.Cr.1993); *aff'd*, *Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). "In making this determination, this Court should view the evidence in the light most favorable to the State." *Id.*

¶ 89 After Appellant killed Hand, he kicked in the door to Elizabeth Hill's bedroom and ripped the phone from her hand. He tackled her as she tried to run out of the duplex. Placing both hands around her neck, he choked her. Hill testified she could not breathe and that somehow she freed herself and ran out of the duplex. Appellant argues that because Hall never lost consciousness, did not sustain any permanent physical injury, admitted she had no idea how she got away, and as no weapon was used, the evidence was insufficient to prove there was any risk of death.

¶ 90 This aggravating circumstance is proved by a defendant's acts which create a risk of death to another "in close proximity, in terms of time, location, and intent" to the killing. *Le*, 947 P.2d at 549. The gravamen of the circumstance is not the number of persons killed, but the callous creation of the risk to more than one person. *McCracken v. State*, 887 P.2d 323, 332 (Okl.Cr.1994), *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

¶ 91 Here, Appellant choked Hill. That he did not choke her to death does not invalidate the aggravator. While Appellant may not have verbally threatened Ms. Hill's life, choking her certainly amounts to a threat to take away her life. Appellant contends it is possible he let Hill go thereby negating the intent to kill her. The evidence is not clear as to exactly how Ms. Hill got away from Appellant, and we will not speculate on possibilities. That she was not sure how she got away does not reduce the actual risk to her. The jury looked at the evidence of the attack on Ms. Hill and found it sufficient to sustain a conviction for assault and

battery with intent to kill.[9] We have reviewed the evidence for purposes of sustaining the aggravator and find it sufficient to show Appellant threatened the life of Ms. Hill and had the apparent ability and means of taking her life. We reject Appellant's argument that Ms. Hill's life was not placed in actual great risk of death and find the evidence supported the jury's finding of the aggravator. This assignment of error is denied.

### D.

¶ 92 Turning to other allegations of error concerning second stage issues, Appellant contends in his ninth assignment of error that State's Exhibit 67, a judgment and commitment order from the circuit court of Jefferson County, Arkansas, reflecting a conviction for the crime of rape, was improperly admitted. Appellant did not raise an objection at the time the exhibit was introduced. However, later in the second stage an objection was made on the grounds the exhibit did not reflect whether a plea of guilty or nolo contendere was entered. The trial court overruled the objection on the grounds the exhibit was certified and the omission was merely a scrivener's error.

¶ 93 In light of Appellant's failure to raise a timely objection, we review only for plain error. *Miller v. State*, 977 P.2d 1099, 1110 (Okl.Cr.1998); *Simpson v. State*, 876 P.2d 690, 693 (Okl.Cr.1994). Appellant now argues on appeal that the exhibit was inadmissible hearsay as it failed to fall within the provision for final judgments and sentences pursuant to 12 O.S.1991, § 2803(22).

¶ 94 Admission of evidence is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Miller*, 977 P.2d at 1110. Section 2803(22) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> 22. Evidence of a final judgment, entered after a trial or upon a plea of guilty, but not upon a plea of nolo contendere, adjudg-

---

9. This finding by the jury sufficiently rebuts Appellant claim the evidence did not show he knew

of should have known his choking of Hill were at a " 'great risk' of being lethal."

ing a person guilty of a crime punishable by death or imprisonment in excess of one (1) year, to prove any fact essential to sustain the judgment, but not including, when offered by the state in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility;

¶ 95 The Court has had few opportunities to review section 2803(22). In *Wade v. State,* 624 P.2d 86, 91 (Okl.Cr.1981) the appellant challenged the use of a court minute introduced to prove a prior conviction from Louisiana. The appellant claimed the exhibit was inadmissible hearsay as it did not state it was a final judgment, nor did it in any way state that the judgment was pronounced in accordance with the verdict. In finding the exhibit properly admitted, this Court stated:

> Section 2803(22) applies by its terms to a final judgment offered to prove a fact essential to the judgment. This is not the case where the fact to be proved is the historical occurrence of the conviction for habitual offender purposes. This evidence is more properly entered under the Section 2803(8) exception for public records, where no issue as to the definition of judgment is presented. See State v. Stone, 122 Ariz. 304, 594 P.2d 558 (Ariz.App.1979).

624 P.2d at 91.

¶ 96 In the present case, the Judgment and Commitment Order indicates Appellant appeared personally before the court with legal counsel, was advised of his constitutional rights, and entered a knowing and voluntary plea. The order further sets forth Appellant's name and his attorney's name, the offense of rape, the time to serve at the Arkansas Department of Corrections as twenty years with ten suspended, and that the sentence is to run concurrent with the sentence imposed in the case reflected in State's Exhibit 66. The order is signed by the circuit judge and certified by the clerk. State's Exhibit 66 reflects Appellant pled guilty and was convicted of four separate felonies, three of which were violent crimes.

¶ 97 The document for all purposes reflects a valid final judgment and sentence. It ade-quately reflects appellant was advised of his rights and represented by counsel. *See Staten v. State,* 738 P.2d 565, 566 (Okl.Cr.1987). The failure to check the box indicating whether the conviction was based upon a plea of guilty or a plea of nolo contendere appears to have been a scrivener's error. We find that omission does not render the conviction invalid for purposes of sentencing. Therefore, we find the trial judge did not abuse his discretion in admitting the order into evidence and the order was properly submitted to the jury in support of the aggravating circumstances of prior violent felony and continuing threat. Accordingly, this assignment of error is denied.

### E.

¶ 98 In his eighteenth assignment of error, Appellant contends the use of his prior convictions to support more than one aggravating circumstance skewed the weighing process in the second stage in violation of his constitutional rights. Appellant's prior convictions were used to support both the "prior violent felony" aggravator and the "continuing threat" aggravator.

¶ 99 This Court has upheld the use of the same act or course of conduct to support more than one aggravating circumstance where the evidence shows different aspects of the defendant's character or crime. *Bernay v. State,* 989 P.2d 998, 1016 (Okl.Cr. 1999); *Turrentine,* 965 P.2d at 978; *Cannon v. State,* 961 P.2d 838, 852–53 (Okl.Cr.1998); *Medlock v. State,* 887 P.2d 1333, 1350 (Okl. Cr.1994), *cert. denied,* 516 U.S. 918, 116 S.Ct. 310, 133 L.Ed.2d 213 (1995). Further, the Tenth Circuit has ruled that the two aggravating circumstances at issue here do not impermissibly overlap. *Cooks v. Ward,* 165 F.3d 1283, 1289 (10th Cir.1998).

¶ 100 The prior violent felony aggravator looks to a defendant's criminally violent past to determine whether, when combined with the murder for which he has just been convicted, a death sentence is warranted. The continuing threat aggravator looks toward Appellant's future conduct and the need for protection of society from that probable future criminal conduct. As we

stated in *Woodruff v. State,* 846 P.2d 1124, 1146 (Okl.Cr.), *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993):

> The presentation of Appellant's past history of criminal behavior (the prior convictions for solicitation to commit murder) to prove the "prior violent felony" aggravating circumstance and the presentation of Appellant's propensity for committing future harm (evidence of the Thompson homicide) to prove "continuing threat" address separate and distinct aspects of Appellant's conduct and provide multiple reasons to impose the death penalty. This situation is distinguishable from cases in which multiple aggravators generally describe the same behavior and impose a more severe penalty for exactly the same reasons.

¶ 101 Accordingly, we find the aggravators in this case address separate and distinct aspects of Appellant's conduct. Use of the prior convictions to support two aggravators was not error. This assignment of error is denied.

## SECOND STAGE JURY INSTRUCTIONS
### A.

¶ 102 In his fifteenth assignment of error, Appellant argues the trial court erred in giving an impeachment instruction concerning the testimony of Appellant's brother, Kevin Williams. Evidence of Mr. Williams' prior conviction for attempted second degree murder was admitted during his direct examination. Jury Instruction No. 10,[10] OUJI–CR (2d) 9–22, prohibited the jury from using the evidence as proof of innocence or guilt and restricted its use to that of impeachment. Appellant's objection and proposed instruction have properly preserved the issue for appellate review.

¶ 103 At trial, Appellant objected to the instruction on two grounds. The first objection went to language in the instruction that

the evidence was offered for the specific purpose of showing that the witness was not reliable. Appellant argued the evidence of the witness's prior conviction was offered by the defense and was not offered to discredit the witness but to bolster the credibility of the defense by being forthright about the conviction in order to lessen the "sting" and to corroborate Dr. Peterson's testimony in mitigation. The second objection concerned the prohibition of the jury's consideration of the evidence for any purpose other than impeachment. These same two objections and arguments are now raised on appeal.

¶ 104 Evidence of a witness's prior conviction is properly admissible in order to challenge the credibility of the witness. 12 O.S. 1991, § 2609. The applicability of this provision is not limited according to when the evidence is introduced, be it direct or cross-examination. That the evidence was introduced by the defense is a risk taken by the defense. Introduction of the prior conviction can enhance the credibility of the defense in the eyes of the jury by admitting up front to the conviction. However, it also opens up the possibility the prosecution could argue the witness is not credible because of the prior conviction. While the language in the instruction providing that the purpose for which the evidence is offered is to show that the witness's testimony is not believable or truthful is not completely accurate when the evidence is offered on direct examination, the purpose of the instruction is clear that such evidence can be used only to determine the credibility of the witness and not as substantive evidence against the defendant. Any error in the language of the instruction did not have a substantial impact on the outcome of second stage. Therefore, any error was harmless. *Simpson,* 876 P.2d at 702.

¶ 105 In Appellant's second objection to the instruction, he argues it precluded the

---

**10.** Instruction No. 10 provided:

> Evidence has been presented that Kevin Williams has heretofore been convicted of a criminal offense. This evidence is called impeachment evidence, and it is offered to show that the witness's testimony is not believable or truthful. If you find that this conviction occurred, you may consider this impeachment

> evidence in determining what weight and credit to give the credibility of that witness. You may not consider this impeachment evidence as proof of innocence or guilt of the defendant. You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witness, if at all.

jury from considering the prior conviction as mitigating evidence. In determining the appropriateness of the death sentence in a particular case, the Supreme Court has held that the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2951–2952, 106 L.Ed.2d 256 (1989); *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 876–877, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). This line of cases reflects the belief that punishment should be directly related to the personal culpability of the criminal defendant. "Thus, the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime." *California v. Brown,* 479 U.S. at 545, 107 S.Ct. at 841 (O'Connor, J., concurring).

¶ 106 Evidence of Kevin Williams' prior conviction in and of itself is not relevant evidence mitigating against the death penalty for Appellant because it could not, if believed by the jury, lessen Appellant's culpability and the severity of his sentence. *See Bryson v. State,* 876 P.2d 240, 256–257 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995), relying on *Eddings* and *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 7 (1986). What is mitigating is that Appellant's family had a history of mental disorders and that due to that family heredity there was a strong possibility Appellant also suffered from similar mental disorders. Evidence of Kevin Williams' prior conviction merely demonstrated the family history of mental problems.

¶ 107 Instruction No. 10 did not prevent the jury from considering Kevin Williams' testimony, if they found it credible, as mitigating evidence. Neither Instruction No. 10 nor any other instructions given to the jury prevented their consideration of the family history of mental disorders as mitigating evidence. Further, Instruction No. 19 specifically informed the jury that mitigating evidence had been introduced of Appellant's history of suffering abuse at the hands of his parents. (O.R.277). Accordingly, we find Instruction No. 10 did not prevent the jury from considering any relevant mitigating evidence. This assignment of error is denied.

**B.**

¶ 108 In his sixteenth assignment of error, Appellant complains about Jury Instruction No. 18.[11] He contends his proffered instruction, which adds to the first sentence the phrase "or suggest a reason that the defendant should be punished with a sentence less than death," was improperly rejected by the trial court. Appellant argues that without that language, the jury was prevented from considering all relevant mitigating evidence.

¶ 109 The language of this instruction has been upheld as in accordance with state law and federal constitutional requirements. *See Stafford v. State,* 731 P.2d 1372, 1375 (Okl.Cr.1987). Appellant's argument that his excluded language prevented the jury from considering all relevant mitigating evidence is not persuasive given the other instructions provided to the jury. Initially, Instruction No. 18 also tells the jury that what is to be considered mitigating is for them to decide. This statement broadens any limitations placed on the mitigating evidence through the first sentence. Further, the jury was given an instruction containing approximately ten (10) specifically listed miti-

11. Instruction No. 18, (OUJI–CR (2d) 4–78) provided:
 Mitigating circumstances are those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case. While all twelve jurors must unanimously agree that the State has established beyond a reasonable doubt the existence of at least one aggravating circumstance prior to consideration of the death penalty, unanimous agreement of jurors concerning mitigating circumstances is not required. In addition, mitigating circumstances do not have to be proved beyond a reasonable doubt in order for you to consider them.

gating circumstances. This instruction was approved by Appellant. Here, Appellant has failed to specifically set forth any relevant mitigating evidence which the jury was precluded from considering. Having reviewed Instruction No. 18 in its entirety and in context of the other in instructions provided to the jury, we find there is not a reasonable likelihood that the jury would have applied Instruction No. 18 in a way that prevented them from considering any relevant mitigating evidence. *See Boyde v. California,* 494 U.S. at 380, 110 S.Ct. at 1201. Accordingly this assignment of error is denied.

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

¶ 110 In his nineteenth assignment of error, Appellant contends he was denied the effective assistance of counsel by counsel's concession of guilt during the first stage of trial. In support of his argument, Appellant asserts that during the first stage opening statement, counsel told the jury they would be making a "first decision," implied that he believed there would be a second decision-meaning a second stage decision, and that there would more evidence put before the jury after the guilt stage. Appellant further directs us to four occasions during the cross-examination of Consuela Drew wherein counsel referred to the "murder" in this case. Finally, as to counsel's closing argument, Appellant asserts counsel raised no defense, and aside from referencing the State's burden of proof, conveyed an expectation that the jury would convict. Appellant argues these instances of ineffectiveness, together with counsel's failure to request suitable first stage jury instructions on second degree felony-murder, resulted in a complete failure by counsel to subject the prosecution's case to meaningful adversarial testing. Therefore, he claims, a presumption of ineffectiveness applies without a showing of prejudice or inquiry into actual trial performance. *See United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2046–48, 80 L.Ed.2d 657 (1984).

 ¶ 111 Our review of the record shows this is not a situation where the presumption of prejudice is appropriate. *See Id.* Therefore, our standard of review is that set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), applying the presumption that trial counsel was competent to provide the guiding hand that the accused needed, and therefore the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Id.; see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Strickland* sets forth the two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction … resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. 466 U.S. at 688–89, 104 S.Ct. at 2065. The burden rests with Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. This Court has stated the issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. *Bryson v. State,* 876 P.2d 240, 264 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

¶ 112 A review of the record shows counsel did not concede guilt during the first stage. Counsel's opening statement is reprinted below:

We'll make one now. Thank you, Judge. Good morning, ladies and gentlemen. You've heard Mr. Collier tell you about the evidence he intends to show you to prove or to try to prove that on the morning of May 14, 1997, my client, Sterling Williams,

killed LeAnna Hand and attacked Elizabeth Hill. I'm going to ask you to pay very close attention to that evidence, and I'm sure you will. That evidence is going to be very important to you, all of the evidence you hear.

You're going to have to make some serious decisions about some serious issues in this trial. And by the time you have heard this evidence, you'll be ready to make perhaps the first decision, as to whether or not Sterling Williams killed LeAnna Hand on May 14, 1997. That will be the first important decision you'll have to make. But once you've made that decision after you've heard all this evidence, by the time this trial is over, you will realize that there is a lot more going on with the facts of this case and with Sterling Williams than what the district attorney has just told you. Thank you.

■ ¶ 113 Counsel did not concede guilt in this statement. Counsel's reference to the "first decision" the jury must make does not necessarily imply a second stage of trial and a decision on punishment. As noted by counsel, the jury had before it two decisions in the first stage—Appellant's guilt or innocence concerning Hand's murder and his guilt or innocence in the attack on Elizabeth Hill. Further, counsel's statement that once the trial was over, the jury would realize there was a lot more going on with the case does not imply counsel anticipated evidence to be put before the jury after the guilt stage. It merely informed the jury that once the trial was over, they would know a lot more about the case than what the prosecutor had stated in his opening statement. In his opening statement, counsel did not state that Appellant was guilty. He merely said the State was going to try prove his client guilty and the jury must listen to all of the evidence.

■ ¶ 114 During his cross-examination of Consuela Drew, counsel did refer to the killing in this case as murder. However, counsel never conceded that Appellant had committed the killing. Therefore, we find this was not a concession of guilt. Due to the substantial evidence of guilt in this case, we find Appellant was not prejudiced the

remarks as there is no reasonable probability that but for counsel's use of the term murder, the proceedings would have been different.

¶ 115 Further in closing argument, we find no concession of guilt. The entire first stage closing argument is printed below:

Thank you Your Honor. Good afternoon, ladies and gentlemen. I want to thank you for your week's worth of patience and the attention you've paid to this evidence. All through voir dire and all through this evidence, we have never once said to you, Sterling Williams didn't do this. But we don't have to. It's up to the State to prove to you beyond a reasonable doubt that he did, and that's your job now. He's charged with murder in the first degree. He's charged with assault and battery with intent to kill. And you've got instructions on those charges, and you've also got an instruction on assault and battery. And now it is your job to retire back there and decide, based on the evidence you've heard, which, if any, of those crimes Sterling Williams committed. That's your job. That's what we're asking you to do now. That may be the easy part. But when we were doing voir dire, we spent a lot of time talking about sentencing and appropriate sentences. And that is not your job now. Withhold any thought at this point about sentences, because it would be easy for you to do, is to think, I'm convinced Sterling Williams did these things, and here's what I think ought to happen to him because of it. But that's not your job now. Resist that temptation. Don't do it. Determine guilt, if any, but not sentencing, because as I told you in opening statement, there is a lot more to this story. If you determine Sterling is guilty of these crimes, there is a lot more to this story than what the district attorney has told you. And don't determine sentence until you have heard this whole story. Thank you very much.

■ ¶ 116 This argument does not convey the belief that Appellant is guilty. Trial counsel held the State to its burden of proof. Counsel referred the jury to the instructions and the evidence and argued the State had not met its burden of proof. These were

correct statements of the law. Counsel's reference to second stage was in the form of a hypothetical statement—that if the jury determined Appellant was guilty, the decision as to his punishment was not to be made at that time. The comment did not imply that Appellant was guilty.

¶ 117 In light of the uncontradicted evidence of Appellant's participation in the killing, the only real issue in the first stage of trial was Appellant's intent. Counsel vigorously challenged the State's theory of premeditation. Counsel's decision to limit his first stage opening statement and closing argument was a reasonable strategy decision to maintain credibility with jurors for sentencing. *See Pickens v. Gibson,* 206 F.3d 988, 1001 (10th Cir.2000). This Court will not second guess trial strategy on appeal. *Short,* 980 P.2d at 1107. In *Wood v. State,* 959 P.2d 1, 16 (Okl.Cr.1998) this Court rejected a similar claim that trial counsel conceded guilt during closing argument. The Court stated:

> In light of the overwhelming evidence against Appellant, trial counsel may have decided not to overstate his case lest he lose credibility for the second stage where he would need it the most. A fine trial lawyer may well decide that guilt could not be doubted and save the best for saving his life. We do not find counsel's performance deficient under the circumstances.

We find that counsel in this case exercised the skill, judgment and diligence of a competent defense attorney under the circumstances when he employed the strategy to limit his first stage arguments and focus on punishment and culpability.

¶ 118 As for the failure to request appropriate instructions on second degree felony murder, the propriety of such instructions was discussed in Propositions three and fourteen. We found that such instructions were not warranted by the evidence. Therefore, counsel was not ineffective for failing to offer second degree felony-murder instructions.

¶ 119 Appellant next turns to second stage and argues that counsel was ineffective for failing to present additional mitigating evidence. During second stage, the defense presented the testimony of Kevin Williams, Appellant's brother, and psychiatrist Dr. Stephen Peterson. Kevin Williams testified that he and Appellant grew up in Chicago where they lived with their parents and brothers and sisters. He stated that both he and Appellant were beaten during their childhood by their father. Kevin testified to numerous instances of beatings suffered by Appellant. He also testified that he and Appellant watched their father's pornographic movies beginning at the age of eight or nine.

¶ 120 In order to make a psychiatric assessment of Appellant, Dr. Peterson interviewed him for approximately seven and one half hours. He also interviewed other family members, and reviewed the medical records of Appellant and other family members. Dr. Peterson's testimony concerning the physical abuse suffered by Appellant in his childhood corroborated Kevin's testimony. Dr. Peterson also testified that he had reviewed the psychiatric records of Appellant's brother Truman who had become institutionalized. Dr. Peterson testified the records indicated Truman had been sexually abused during his childhood and that his parents may have had a role in such abuse. Dr. Peterson also testified to reviewing reports which showed that Appellant's mother had beaten him, that Kevin was diagnosed with bipolar disorder, and that another brother Elliott was diagnosed with bipolar disorder and alcohol abuse.

¶ 121 Now on appeal, Appellant argues counsel was ineffective for failing to call Appellant's father, Earl Williams, Jr., as a witness and failing to offer any reports in documenting the illnesses of Appellant's siblings or instances of child abuse. Appellant argues that without such evidence, he was unable to rebut the prosecution's closing arguments that the mitigation evidence was exaggerated, that the jury should discard all of the mitigation, and that "the only documentation, the only actual thing on paper anywhere is the fact that he [Earl Williams, Jr.] had a good family life; that he was a minister; that he was a caring father."

¶ 122 The record indicates that as of the beginning of the first stage of trial, counsel planned to call Earl Williams, Jr., as a second stage witness. (Tr. Vol.IV., pg.612).

However, Mr. Williams ultimately was not called and the record is void of any explanation. The record shows that much of the testimony from Kevin concerning his father, and certain portions of Dr. Peterson's testimony were not at all favorable or flattering to Mr. Williams. In addition to Kevin's testimony concerning numerous beatings inflicted upon Appellant and himself by his father, Dr. Peterson testified that Mr. Williams stated he raised his children by the creed "work 'em, beat 'em and feed 'em." Dr. Peterson testified Mr. Williams was an elder in his church, yet he physically abused his children and his wife, and that he had a long term relationship with another woman and fathered three children by her. As stated above, no explanation is given for the decision not to call Mr. Williams as a witness. Therefore, we do not know whether Mr. Williams himself decided against testifying or whether counsel made a strategic decision not to call him as a witness.

¶ 123 As for written documentation in support of Dr. Peterson's testimony, the record indicates the records reviewed by Dr. Peterson were voluminous. He testified he reviewed a four-inch thick sheaf of medical records on Appellant's brother Truman, military and medical records on his brother Elliott, and medical records on Kevin. The prosecution's challenges to Dr. Peterson's testimony came in the not unexpected form of arguments that he was influenced by the fact he was being paid by the defense, not that his testimony was not supported by written documentation. The focus of the prosecution's argument that the mitigation evidence was exaggerated was the lack of any written documentation supporting the defense's claims of childhood abuse. On that issue, Dr. Peterson testified that to the best of his knowledge there was no documentation with the Illinois Department of Human Services or any law enforcement agencies regarding any abuse of Appellant and his siblings.

¶ 124 When counsel has mitigating evidence and elects not to present it at trial, the Tenth Circuit has stated:

> If counsel has mitigating evidence available but elects not to present that evidence, then the inquiry must focus on the reason or reasons for the decision not to introduce that evidence. If counsel had a reasonable basis for his strategic decision that an explanation of petitioner's history would not have minimized the risk of the death penalty, then that decision must be given a strong presumption of correctness and the inquiry is generally at an end. If, however, the decision is not tactical, and counsel's performance is therefore deficient, then the first prong of *Strickland* is satisfied. *Id.* at 1368.

*Duvall v. Reynolds,* 139 F.3d 768, 777 (10th Cir.1998) quoting *Brecheen v. Reynolds,* 41 F.3d 1343, 1368 (10th Cir.1994).

¶ 125 Here, counsel presented two witnesses who testified to Appellant's traumatic childhood and his family history of mental disorders. The testimony of Dr. Peterson and Kevin Williams sufficiently rebutted any arguments that Mr. Williams was a caring father with a good family life. The presentation of additional witnesses documenting Appellant's childhood and corroborating Dr. Peterson's testimony probably would not have changed the tone of the prosecutor's closing argument. The closing argument in this case followed a familiar pattern and would more than likely have remained the same no matter how many witnesses the defense offered. Further, corroborating Dr. Peterson's testimony with written documentation of the illnesses of Appellant's siblings would have been merely cumulative to his testimony. Appellant was not denied the presentation of any relevant mitigation evidence. The presentation of the additional evidence now sought by Appellant would not have minimized the risk of the death penalty in light of the substantial evidence in aggravation. Trial counsel's decision to not present additional mitigating evidence was reasonable trial strategy under the circumstances. Trial counsel presented a vigorous second stage defense. Giving deference to the decisions made by trial counsel, we conclude his performance was not constitutionally deficient.

¶ 126 Having thoroughly reviewed the record, and all of Appellant's allegations of ineffectiveness, we have considered coun-

sel's challenged conduct on the facts of the case as viewed at the time and have asked if the conduct was professionally unreasonable and, if so, whether the error affected the jury's judgment. *Short,* 980 P.2d at 1107. In that light, we find that certain omissions and errors were made by trial counsel. In determining whether these errors or omissions were outside the wide range of professionally competent assistance, we consider whether counsel fulfilled the function of making the adversarial testing process work. *Id.* As our ultimate focus must be on the fundamental fairness of the trial, we find that Appellant has failed to rebut the strong presumption that counsel's conduct was professionally reasonable and that he has failed to show that he was denied a fundamentally fair trial. Accordingly, this assignment of error is denied.

## ACCUMULATION OF ERROR CLAIM

¶ 127 In his twentieth assignment of error, Appellant contends the aggregate impact of the errors in this case warrants reversal of his convictions and at the very least modification of his death sentence. This Court has repeatedly held that a cumulative error argument has no merit when this Court fails to sustain any of the other errors raised by Appellant. *Ashinsky v. State,* 780 P.2d 201, 209 (Okl.Cr.1989); *Weeks v. State,* 745 P.2d 1194, 1196 (Okl.Cr.1987). However, when there have been numerous irregularities during the course of a trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors is to deny the defendant a fair trial. *Bechtel v. State,* 738 P.2d 559, 561 (Okl.Cr.1987). We have found error occurring in both the first and second stages of this trial. None of these errors required reversal singly. In viewing the cumulative effect of these errors we also find they do not require reversal of this case as none were so egregious or numerous as to have denied Appellant a fair trial. *Gilbert v. State,* 951 P.2d 98, 122, (Okl.Cr.1997), *cert. denied,* 525 U.S. 890, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998). Therefore, no new trial or modification of sentence is warranted and this assignment of error is denied.

## MANDATORY SENTENCE REVIEW

¶ 128 Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.1991, § 701.12. Turning to the second portion of this mandate, the jury found the existence of four (4) aggravating circumstances: 1) the defendant was previously convicted of a felony involving the use of threat of violence to the person; 2) the defendant knowingly created a great risk of death to more than one person; 3) the murder was committed for the purpose of avoiding lawful arrest or prosecution; and 4) there was an existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(1)(2)(5) and (7).

¶ 129 In Proposition Ten, we found the aggravator of "avoid lawful arrest or prosecution" invalid as it was not supported by the evidence. When an aggravating circumstance is found to be invalid, this Court has the authority to review any remaining aggravating circumstances and the mitigating evidence to determine the validity of the death sentence. *Barnett,* 853 P.2d at 234. A specific reweighing of the aggravating circumstances versus the mitigating factors is implicit to this review. *Id. See also Robedeaux v. State,* 866 P.2d 417, 436 (Okl.Cr. 1993), *cert. denied,* 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994); *Hayes v. State,* 845 P.2d 890, 893 (Okl.Cr.1992).

¶ 130 Turning to the remaining aggravating circumstances, evidence of Appellant's previous felony convictions from Arkansas was sufficient to prove the aggravator of "prior violent felony". *See Patton,* 973 P.2d at 296. In Proposition Eleven, we found the "great risk of death" aggravator was supported by sufficient evidence.

¶ 131 To prove the aggravating circumstance of "continuing threat", this Court has held "the State may present any relevant evidence, in conformance with the rules of evidence, ... including evidence from the

crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses or any other relevant evidence." *Battenfield v. State*, 816 P.2d 555, 566 (Okl.Cr. 1991), *cert. denied*, 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). In the present case, evidence of Appellant's criminal history, which included his prior convictions for violent offenses, his prior unadjudicated offenses, and the evidence in which the murder of LeAnna Beth Hand was committed was sufficient to support this aggravator. *See Hain v. State*, 919 P.2d 1130, 1147–48 (Okl. Cr.1996); *cert. denied*, 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996) (in determining the callousness of the crime, the defendant's attitude is critical to the determination of whether he poses a continuing threat to society.) This evidence showed Appellant has a propensity toward violence which makes him a continuing threat to society.

¶ 132 Turning to the mitigating evidence. Appellant presented two (2) witnesses: his brother Kevin and psychiatrist Dr. Peterson. These witnesses testified that Appellant suffered severe emotional trauma as a child due to frequent emotional neglect and physical, mental, and emotional abuse inflicted on him by his parents; such trauma had a long term impact on Appellant's life which contributed to the murder of the deceased; Appellant was under the influence of extreme mental/emotional disturbance at the time of the crime; Appellant was deprived off his normal judgment and reasoning ability at the time of the crime; Appellant is amenable to treatment; he does not pose a threat in a prison environment; cooperation by Appellant with the authorities; Appellant's character and work ethic; that he has a family who loves him and would be severely impacted should he be put to death; and Appellant is a human being whose life has value. This evidence was summarized into ten (10) factors and submitted to the jury for their consideration as mitigating evidence, as well as any other circumstances the jury might find existing or mitigating.

¶ 133 Upon a review of the record, and careful reweighing of the three remaining valid aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. The mitigating evidence does not outweigh the remaining valid aggravators. We find the jury would have still assessed the death penalty even without the "avoid lawful arrest or prosecution" aggravator. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.1991, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the **JUDGMENTS** and **SENTENCES** for First Degree Murder and Assault and Battery with Intent to Kill are **AFFIRMED**

JOHNSON, V.P.J., concur.

CHAPEL, J., dissent.

LILE, J., concur.

WINCHESTER, S.J., concur.

CHAPEL, Judge, Dissenting:

¶ 1 Williams requested Second Degree Murder instructions at trial.[1] As the trial court's denial of Williams's request and refusal to so instruct the jury constituted reversible error, his Judgment and Sentence should be reversed and the case remanded for a new trial.

¶ 2 In *Hogan v. Gibson*, the Tenth Circuit Court of Appeals was critical of applying a "sufficiency of the evidence for the greater offense" standard to assess the necessity of lesser-included instructions.[2] Mindful of *Ho-*

---

1. Second Degree Murder is divided into two subparts: murder committed (1) by one with a "depraved mind" or (2) during the commission of a felony other than those enumerated in the First Degree Murder statute. 21 O.S.1991, § 701.8 Although Williams's request for Second Degree Murder instructions rested on both theories, only the "depraved mind" claim has merit. Similar-

ly, the denial of Williams's request for First Degree Manslaughter instructions was appropriate as those instructions were not supported by the evidence.

2. *Hogan v. Gibson*, 197 F.3d 1297 (10th Cir. 1999). The Tenth Circuit elaborated: "[the Oklahoma Court of Criminal Appeals should con-

*gan,* the majority opinion correctly states that lesser-included instructions such as those sought by Williams should be given if supported by the evidence.[3] As well, the majority accurately cites the applicable test as "whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser." [4]

¶ 3 Notwithstanding the lip service paid to the Tenth Circuit, this case is *Hogan redux.* Its conclusions were correctly noted but erroneously applied.[5] The majority opinion states but ignores the proper test, replacing it with a rule that essentially excuses a refusal to give warranted instructions whenever the evidence supports the jury's ultimate determination.[6] While I agree that the evidence presented at Williams's trial may have sufficiently supported a finding that he intended to kill the victim and was guilty of First Degree Murder, that determination is irrelevant to whether he was entitled to a lesser-included offense instruction.

¶ 4 The majority's analysis turns on its claim that the evidence does not support the conclusion that Williams acted without premeditated intent.[7] It reiterates indications of Williams's intent to kill the victim,[8] dismisses one of Williams's arguments by noting that premeditation can be formed in an instant,[9] and concludes that since the evidence was sufficient for any rational trier of fact to find that Williams acted with the intent to kill, Second Degree Murder instructions were not warranted.[10] This analysis is a backhanded way of stating that the evidence was sufficient to support the jury's finding of intent to kill, and remains a "gross deviation" from the *Beck* rule as noted by the *Hogan* Court.[11]

¶ 5 I find that Williams was entitled to a Second Degree Murder instruction. Specifically, Second Degree "Depraved Mind" Murder occurs when death results from an act imminently dangerous to another, done with a depraved mind but without a premeditated design to effect death.[12] Williams's act of stabbing the victim's chest was imminently dangerous and evidenced reckless indifference to her life and safety. The central question here is whether he committed this act with or without the intent to kill. The evidence supports either conclusion.

¶ 6 Williams entered the victim's house with her consent, purportedly to deliver meat. Indeed, his possession of a steak box containing a knife, gloves, and duct tape suggests an entry was prompted by criminal intent-Rape, Kidnapping or Murder.[13] The prosecution's theory was that he planned to rape the victim. The evidence indicates that during Williams's struggle to subdue the victim, he fatally stabbed her once in the chest. Did he intend to kill her? Perhaps. By contrast, his single stab could have been a defensive reaction to her struggle, intended to subdue her further, prevent his own injury, or facilitate his flight from the scene. The record indicates that the evidence supports either characterization, which is exactly why a lesser-included instruction should have

---

sider] whether there is sufficient evidence to warrant instructing the jury on a lesser included offense, not whether there is sufficient evidence to warrant conviction of the greater offense." *Id.* at 1305.

3. Majority Opinion at 711 citing *Shrum v. State,* 991 P.2d 1032, 1037–39 (Okl.Cr.1999)

4. Majority Opinion at 711 citing *Hogan v. Gibson,* 197 F.3d 1297 (10th Cir.1999).

5. This is not the first time this Court has erroneously analyzed a lesser included instruction question. See *Gilson v. State,* 8 P.3d 883, 932 (Okl. Cr.2000) (Chapel, J., dissenting).

6. "The evidence clearly supports a finding that when Appellant stabbed the deceased, he did so with the intent to kill her, regardless of whether that intent was formed prior to or after arriving

at her home. Accordingly, instructions on second degree depraved mind murder were not warranted." Majority Opinion at 712.

7. Majority Opinion at 712.

8. Majority Opinion at 712.

9. Majority Opinion at 712.

10. Majority Opinion at 712.

11. *Hogan,* 197 F.3d at 1305.

12. 21 O.S.1991, § 701.8.

13. No money or property was taken so it is fair to assume that Williams did not intend to rob the victim.

been given.[14] The question (and the answer) was one for the jury. Just as a reasonable juror could have found the elements for First Degree Murder, so could a juror have determined that Williams did *not* intend to kill the victim, convicting him of Second Degree Murder instead.[15]

¶ 7 Williams should have received his requested instruction; failure to give it was reversible error. I dissent.

14. Additionally, this Court has upheld Second Degree Murder convictions challenged on the sufficiency of the evidence based upon analogous facts. *Dickson v. State,* 761 P.2d 860 (Okl.Cr.1988)(defendant shot victim once in the head at close range but asserted that he did not intend to hurt victim); *Dorsey v. State,* 739 P.2d 528 (Okl.Cr.1987)(defendant armed himself with knife, started a fight with the victim, and intentionally stabbed him); *Foster v. State,* 657 P.2d 166 (Okl.Cr.1983)(defendant stabbed her newborn baby multiple times upon birth and placed it in a trash can). Although this is not the standard for review, it is clearly persuasive in evaluating whether there was sufficient evidence to support the instruction. Moreover, based upon the foregoing cases, it is obvious that this Court would have upheld Williams's conviction for Second Degree Murder.

15. In the future, I would advise trial courts to liberally construe the evidence in favor of instructing juries on lesser included offenses. Central to our system of justice is allowing a jury to decide a defendant's guilt or innocence on an informed basis. Allowing a jury to choose between acquittal and two or more possible convictions only further insures that a verdict is fair and just.